UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JONATHON MICHAEL KRAMER,

        Plaintiff,

      v.                                       Case No. 19-C-1558

ANDREW M. SAUL,

        Defendant.

---

**DECISION AND ORDER AFFIRMING THE COMMISSIONER'S DECISION**

---

      This is an action for judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Jonathon Michael Kramer's application for supplemental security income under Title XVI of the Social Security Act. Plaintiff, who is currently representing himself, asserts that the Commissioner's decision should be reversed for several reasons. For the reasons that follow, the decision of the Commissioner will be affirmed.

## BACKGROUND

      Plaintiff filed an application for supplemental security income on June 1, 2016, alleging disability beginning March 10, 2016. He listed anxiety, depression, substance abuse (alcohol), migraines, and high blood pressure as the conditions that limited his ability to work. R. 163. After his application was denied initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge (ALJ). On June 11, 2018, ALJ Guila Parker conducted a hearing where Plaintiff, who was represented by counsel, and a vocational expert (VE) testified. R. 30–63.

      Plaintiff was 28 years old at the time of the hearing and lived in a house with his parents. R. 35–36. Plaintiff completed high school. R. 35. He had worked in various general labor jobs

and had not worked since 2015. R. 37, 42. Plaintiff testified that, about four to five times a week, his depression drains his energy and forces him to stay in his room. R. 42–43. He stated that he has social anxiety that causes panic attacks and trouble breathing. He described getting very warm, sweaty, and shaky when he goes out in public. R. 44. Plaintiff testified that his social anxiety caused him to miss work. R. 45. He reported that his mixture of medications makes him dizzy, so he needs to take breaks. R. 46. He also testified that one of his medications causes migraines three to four times a week. R. 54. Plaintiff stated that his mother keeps track of and gives him his medication. He sleeps for about two hours each night and takes naps during the day. R. 47–48. Plaintiff had an alcohol problem but had been abstinent for almost five months. R. 48.

In a twelve-page decision dated October 25, 2018, the ALJ determined Plaintiff was not disabled. R. 13–24. The ALJ's decision followed the five-step sequential evaluation process for determining disability prescribed by the Social Security Administration (SSA). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 1, 2016, the application date. R. 16. At step two, the ALJ concluded Plaintiff had the following severe impairments: migraines, depression, insomnia, social anxiety, and alcohol addiction. *Id.* At step three, the ALJ found Plaintiff's impairments, including the substance use disorder, meet sections 12.04 and 12.06 of 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* But if Plaintiff stopped the substance use, the ALJ determined that he would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 17.

Next, the ALJ assessed Plaintiff's residual functional capacity (RFC) and found that, if Plaintiff stopped the substance use, he would have the RFC to perform a full range of work at all exertional levels but with the following non-exertional limitations:

2

> He should not work at unprotected heights or around dangerous moving machinery. He can understand, remember, and carry out simple or detailed instructions. He can make occasional work-related decisions and can tolerate occasional changes in the work setting. He occasionally can interact with co-workers. The claimant can work in proximity to the public and have brief and superficial interaction with the public. He can work in an environment that does not impose fast-paced production requirements or piecework quotas. The claimant should avoid concentrated exposure to fumes, dusts, odors, gases, or similar pulmonary irritants. Due to his migraine headaches, he is likely to be absent from work one day per month.

R. 19. At step four, the ALJ concluded that Plaintiff has no past relevant work but, if Plaintiff stopped the substance use and considering his age, education, work experience, and RFC, there would be a significant number of jobs in the national economy that Plaintiff could perform, including laundry worker, order picker, and cafeteria attendant. R. 23–24. The ALJ noted that the substance use disorder is a contributing factor material to the determination of disability because Plaintiff would not be disabled if he stopped the substance use. She concluded that, because the substance use disorder is a contributing factor material to the determination of disability, Plaintiff has not been disabled within the meaning of the Social Security Act at any time from the date the application was filed through the date of the decision. R. 24. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.

## LEGAL STANDARD

The burden of proof in social security disability cases is on the claimant. 20 C.F.R. § 404.1512(a) ("In general, you have to prove to us that you are blind or disabled."). While a limited burden of demonstrating that other jobs exist in significant numbers in the national economy that the claimant can perform shifts to the SSA at the fifth step in the sequential process, the overall burden remains with the claimant. 20 C.F.R. § 404.1512(f). This only makes sense, given the fact that the vast majority of people under retirement age are capable of performing the essential functions required for some subset of the myriad of jobs that exist in the national

economy. It also makes sense because, for many physical and mental impairments, objective evidence cannot distinguish those that render a person incapable of full-time work from those that make such employment merely more difficult. Finally, placing the burden of proof on the claimant makes sense because many people may be inclined to seek the benefits that come with a finding of disability when better paying and somewhat attractive employment is not readily available.

The determination of whether a claimant has met this burden is entrusted to the Commissioner of the Social Security Administration. Judicial review of the decisions of the Commissioner, like judicial review of all administrative agencies, is intended to be deferential. *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010). The Social Security Act specifies that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). But the "substantial evidence" test is not intended to reverse the burden of proof. In other words, a finding that the claimant is not disabled can also follow from a lack of convincing evidence.

Nor does the test require that the Commissioner cite conclusive evidence excluding any possibility that the claimant is unable to work. Such evidence, in the vast majority of cases that go to hearing, is seldom, if ever, available. Instead, the substantial evidence test is intended to ensure that the Commissioner's decision has a reasonable evidentiary basis. *Sanders v. Colvin*, 600 F. App'x 469, 470 (7th Cir. 2015) ("The substantial-evidence standard, however, asks whether the administrative decision is rationally supported, not whether it is correct (in the sense that federal judges would have reached the same conclusions on the same record).").

The Supreme Court recently reaffirmed that, "[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)

4

Case 1:19-cv-01558-WCG   Filed 03/16/21   Page 4 of 12   Document 22

(quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "The phrase 'substantial evidence,'" the Court explained, "is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding." *Id.* "And whatever the meaning of 'substantial' in other contexts," the Court noted, "the threshold for such evidentiary sufficiency is not high." *Id.* Substantial evidence is "'more than a mere scintilla.'" *Id.* (quoting *Consolidated Edison*, 305 U.S. at 229). It means—and means only—"'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.*

The ALJ must provide a "logical bridge" between the evidence and his or her conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). "Although an ALJ need not discuss every piece of evidence in the record, the ALJ may not ignore an entire line of evidence that is contrary to the ruling." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009) (citing *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009); *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004)). But it is not the job of a reviewing court to "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Given this standard, and because a reviewing court may not substitute its judgment for that of the ALJ, "challenges to the sufficiency of the evidence rarely succeed." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005).

Additionally, the ALJ is expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

## ANALYSIS

The court will first address the exhibits attached to Plaintiff's briefs. A court may "at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405.

> Evidence is "new" if it was "not in existence to the claimant at the time of the administrative proceeding." New evidence is "material" if there is a "reasonable probability" that the ALJ would have reached a different conclusion had the evidence been considered. Thus, new evidence is material only if it is relevant to the claimant's condition "during the relevant time period encompassed by the disability application under review."

*Schmidt v. Barnhart*, 395 F.3d 737, 742 (7th Cir. 2005) (citations omitted). Plaintiff has submitted records of treatment that occurred before the ALJ issued her decision, but Plaintiff has not explained why these records were not part of the administrative record or submitted earlier. He has also submitted records and evidence created after the ALJ's decision. The information regarding the treatment of Plaintiff's symptoms related to anxiety, depression, alcohol addiction, and bipolar disorder were included in the administrative record. This evidence does not create a reasonable probability that the ALJ would have reached a different conclusion if she were to consider it. Therefore, the court will not consider the new evidence submitted by Plaintiff or order that it be reviewed by the Commissioner of Social Security. The court will now address Plaintiff's challenges to the ALJ's decision.

Plaintiff raises numerous challenges to the ALJ's decision. Although pro se filings are held to a less exacting standard than those prepared by counsel, the filing must contain a cogent argument with reasons supporting it as well as citations to authority and relevant parts of the record. *See Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001); *McCormick v. City of*

*Chicago*, 230 F.3d 319, 325 (7th Cir. 2000). The court has undertaken a review of the record and concludes that the ALJ did not err.

Plaintiff challenges the ALJ's RFC assessment. A claimant's RFC "is the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). It is a "function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p. The ALJ assesses a claimant's RFC "based on all the relevant evidence" in the case record, including severe and non-severe impairments as well as medical and non-medical evidence. 20 C.F.R. § 404.1545(e). Plaintiff asserts that his impairments caused greater limitations than the ALJ found. In particular, Plaintiff argues that the ALJ ignored evidence concerning his Bipolar II Disorder diagnosis and the limitations caused by the disorder and its relation to his alcohol abuse. In this case, the ALJ properly assessed the work-related functional limitations caused by Plaintiff's impairments, without considering his alcohol addiction.

Under the Social Security Act, an individual shall not be considered disabled "if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 1382c(a)(3)(J). Drug or alcohol addiction is a contributing factor material to the determination of disability if the claimant would no longer be disabled if he stopped the substance use. 20 C.F.R. § 416.935(b). To determine whether drug addiction or alcoholism is a material factor, the ALJ must evaluate which of the current physical and mental limitations would remain if the claimant stopped the substance use and then consider whether any or all of the remaining limitations would be disabling. § 416.935(b)(2). If the ALJ finds that the claimant's remaining limitations are disabling, the claimant is disabled independent of the substance use and the ALJ must find that drug addiction and alcoholism is not a contributing factor material to the determination of disability. § 416.935(b)(2)(ii). But if the ALJ finds that the

remaining limitations are not disabling, then the ALJ must find that the drug addiction and alcoholism is a contributing factor material to the determination of disability and that the claimant is therefore not disabled. § 416.935(b)(i); *see also* SSR 13-2p.

The ALJ found that the evidence showed Plaintiff's alcohol addiction was material to a finding of disability. Plaintiff does not challenge the ALJ's conclusion that his alcohol addiction was a contributing factor material to the determination of disability because Plaintiff would not be disabled if he stopped the substance use. Instead, Plaintiff asserts that the ALJ failed to consider his bipolar disorder and its relation to his alcohol abuse. But this argument is perfunctory and undeveloped, so it is waived. *See Hall v. Berryhill*, 906 F.3d 640, 644 (7th Cir. 2018) ("perfunctory and underdeveloped arguments are deemed waived" (citation omitted)); *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("perfunctory and underdeveloped arguments, and arguments that are unsupported by pertinent authority, are waived").

Plaintiff further asserts that the ALJ ignored evidence concerning his bipolar disorder when assessing the RFC. The ALJ concluded that, if Plaintiff stopped the substance use, he would have the RFC to perform a full range of work at all exertional levels but with very specific limitations, including Plaintiff should not work at unprotected heights or around dangerous moving machinery; he can understand, remember, and carry out simple or detailed instructions; he can make occasional work-related decisions and can tolerate occasional changes in the work setting; he can occasionally interact with co-workers; he can work in proximity to the public and have brief and superficial interaction with the public; he can work in an environment that does not impose fast-paced production requirements or piecework quotas; he should avoid concentrated exposure to fumes, dust, odors, gases, or similar pulmonary irritants; and he is likely to be absent from work one day per month. R. 19. In creating this detailed RFC, the ALJ thoroughly discussed Plaintiff's

8

symptoms, his testimony, his ability to perform activities of daily living, the medical evidence in the record, the lay evidence, and the medical source opinions.

The ALJ discussed Plaintiff's history of migraines and stated that she provided for Plaintiff's testimony about his headaches by giving him a work restriction that allows him to be absent from work one day per month and gave him environmental work restrictions to avoid possible exacerbations of his headache condition. The ALJ also noted that, prior to his hospitalization for alcohol abuse around the alleged onset date, Plaintiff was not receiving any mental health care. After his release from the first hospitalization, the ALJ observed that Plaintiff was prescribed medication for his mental symptoms and attended some therapy sessions. She explained that medical records document that Plaintiff's symptoms quickly improved. For instance, by July 2016, Plaintiff reported that things are going well and in October 2016, Plaintiff said he was feeling good. R. 21. With continued abstinence, in November 2016, Plaintiff stated he and his other band members were practicing together and a good fit. The ALJ noted that in December 2016, Plaintiff indicated he wanted to stop therapy because he felt he was doing well, and his therapist indicated he was stable. She stated that in September 2016, Plaintiff attended a psychological consultative examination performed by Dr. Rao. During the examination, Plaintiff indicated he was able to maintain sobriety and was committed to getting better. Based on the examination, Dr. Rao assessed Plaintiff with alcohol dependence disorder in partial remission, mild anxiety disorder, and mild depressive disorder. The ALJ noted that the remainder of the treatment records indicated that, while his symptoms abated with medication, Plaintiff's repeated relapses interfered with his overall treatment and emotional stability. She stated that Plaintiff was able to have his infant daughter for visits several times a week, do weight lifting, attend AA meetings, work with his brother-in-law as a general laborer, play his guitar, and spend the day

helping his parents and siblings. She also noted, however, that the evidence shows that Plaintiff endorsed being more reclusive and that he argued with his girlfriend to the extent that it caused her to obtain a restraining order. To provide for Plaintiff's mental symptoms, the ALJ gave Plaintiff the mental work restrictions related to social interaction with coworkers and the public as described above. R. 20.

Plaintiff asserts that the ALJ ignored evidence concerning his Bipolar II Disorder. Plaintiff never mentioned his Bipolar II Disorder as a condition that limited his ability to work or in his testimony at the hearing. The record does not contain any reference to a limitation created by Plaintiff's bipolar diagnosis, and Plaintiff does not identify what additional work-related functional limitations the diagnosis caused. In any event, although the ALJ did not explicitly reference Plaintiff's bipolar diagnosis, she thoroughly discussed all of Plaintiff's mental symptoms when formulating the RFC. The ALJ's discussion of the medical evidence in relation to Plaintiff's alleged symptoms complied with the SSA's rulings and regulations regarding the formulation of a claimant's RFC.

The ALJ also relied on the medical opinion evidence in formulating the RFC. Plaintiff asserts that the ALJ erred in evaluating the medical evidence. Generally, the ALJ must give "controlling weight" to the medical opinions of a treating physician on the nature and severity of an impairment if it is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with other substantial evidence." *Burmester v. Berryhill*, 920 F.3d 507, 512 (7th Cir. 2019); 20 C.F.R. § 416.927(c)(2); SSR 96-2p. If the ALJ decides to give lesser weight to a treating physician's opinion, he must articulate "good reasons" for doing so. *Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010). Stated differently, although an ALJ is not required to give the treating physician's opinion controlling weight, he is still required

10

to provide a "sound explanation for his decision to reject it." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). "If the ALJ does not give the treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009).

Plaintiff argues that the ALJ erred in failing to assign controlling weight to his treating psychiatrist, Dr. Taylor. Dr. Taylor completed a checklist on behalf of Plaintiff in May 2017. He checked off that in most areas of Plaintiff's work-related mental abilities, Plaintiff is "seriously limited, but not precluded." He also determined that Plaintiff would likely be absent from work about three days per month. R. 576–81. The ALJ sufficiently articulated her reasons for giving Dr. Taylor's opinion partial weight when applied to Plaintiff's periods of sobriety. The ALJ noted that she gave some weight to the assessment of limitation in certain areas, but not to the degree indicated. R. 17. She explained that the record does not show that Plaintiff's mental functioning is work preclusive. The ALJ observed that Dr. Taylor's treatment records show that, while Plaintiff still had some symptoms, Plaintiff reported decreased anxiety and depression and improved sleep. Since this evidence documented that Plaintiff had improved functioning, the ALJ gave little weight to Dr. Taylor's statement that Plaintiff would be absent from work about three days per month. R. 22. In short, the ALJ concluded Dr. Taylor's opinions were inconsistent with other evidence in the record, including his own treatment notes. For these reasons, the ALJ did not err in declining to assign controlling weight to Dr. Taylor's opinions.

Plaintiff also asserts that the ALJ failed to properly weigh the medical evidence, as he gave the opinions of Dr. Rao and Dr. Taylor the same weight, even though they did not provide

consistent opinions. The ALJ gave Dr. Rao and Dr. Taylor's opinions partial weight. As to Dr. Rao, the ALJ explained that, while she concurred that the overall record does not show that Plaintiff is prohibited from employment, the evidence does demonstrate that he has some work-related limitations due to his mental symptomology. She noted that, since Dr. Rao evaluated Plaintiff, he has had repeated relapses that led to some worsening of his symptoms. He has endorsed having poor sleep and residual depression and anxiety despite medication. R. 22. Again, the ALJ also gave partial weight to Dr. Taylor's opinions, as the record did not show that Plaintiff's mental functioning is work preclusive. *Id.* In other words, the ALJ found that Plaintiff's limitations were greater than those endorsed by Dr. Rao but less than the limitations found by Dr. Taylor, and she formulated an RFC with limitations that were supported by the record. The ALJ's consideration of these opinions was not unreasonable.

In sum, the ALJ relied upon Plaintiff's medical history, reports of daily activities, medical source statements, symptoms, and lay evidence in assessing Plaintiff's RFC. Substantial evidence supports the ALJ's RFC finding, and she adequately explained how she arrived at her conclusions. The ALJ's conclusion does not necessitate remand.

## CONCLUSION

For the above reasons, the decision of the Commissioner is **AFFIRMED**. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** at Green Bay, Wisconsin this 16th day of March, 2021.

s/ William C. Griesbach<br>
William C. Griesbach<br>
United States District Judge